# Speakman's Appeal.　Morton's Estate.

1. An auditor's finding, if not supported by evidence, will be set aside or disregarded, but like a verdict, must stand unless clearly against the weight of evidence.

2. A widow, administratrix of her husband, married soon after his death ; she made a contract for purchase of land for the second husband, to whom it was conveyed, she alleging the purchase-money belonged to him ; there was no positive evidence that it belonged to the decedent ; the auditor found it did not belong to him : *Held*, that the administratrix was not chargeable with the money.

3. Prior to 1848 the wife's father gave her $25, with which she purchased fowls and materials for sewing ; by sale of fowls, her labor on the materials and other work she accumulated money : *Held*, that the $25 and accumulations belonged to the decedent's estate.

4. She did not enter this money in the inventory or administration account, claiming it as her own : *Held*, not to be fraud, so as to prevent her from receiving $300 exemption.

5. The money was in gold ; she was chargeable with its premium and $300 exemption was payable in currency.

6. The costs under all the circumstances in this case imposed on the accountant.

February 7th 1872.　Before AGNEW, SHARSWOOD and WILLIAMS, JJ.　THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia* : No. 271, to January Term 1871.　In the estate of Lewis Morton, deceased.　The decedent died June 8th 1863, leaving a widow

and mother to survive him, but no children. Administration of his estate was granted to his widow, Margaret Morton; within thirty days she filed an inventory, amounting to $237.50. In the same month she sold the personal property; the vendue list, which. was not filed, amounted to $439.20. In April 1864 the widow married William Knorr.

The mother of the decedent died in September 1865, and administration of her estate was granted to Thomas H. Speakman, the appellant in the case.

In answer to a citation the administratrix of Lewis Morton filed an account of her administration, November 14th 1867. She charged herself with the amount of the inventory only; the account showed a balance of $37.50 in her favor. Exceptions were filed to the account by the administrator of the mother. It was referred to an auditor. After his report, an issue was directed to the Common Pleas to ascertain certain facts. The jury found in favor of the administratrix. The court awarded a new trial; this trial was waived by the parties and the whole matter referred to D. W. Sellers, Esq., as auditor.

He stated in his report that the administrator of the mother of decedent asked a surcharge, viz.:

1. The value of gold claimed by the widow to be hers, $400. 2. The value of gold claimed to be the property of William Knorr, the present husband, $700. 3. The value of the personal estate (as well that in the inventory as some not included), which is thought to be established as of the value of $1000.

He reported that the $400 in gold had been obtained from the personal labor of the administratrix, during the life of the decedent, her husband, by "sewing and raising chickens and eggs, * * and washing." The decedent was a man of intemperate habits; so much so, that on some occasions she had to go to his slaughterhouse and kill sheep for him. Her husband had become so improvident that in 1841 her father gave her $25, with which she bought turkeys and chickens and raised them, and also bought remnants of calico, which she made into quilts and sold the quilts. The gold was neither in the inventory nor the account. These things being the earnings of the wife, the auditor was of opinion that the gold, their proceeds, belonged to the estate of the husband, except the $25 received from her father. The auditor was further of opinion that under the exemption laws the widow could retain "$300, *in gold dollars*, by the count."

He decided that notwithstanding the administratrix had not introduced the gold into the inventory or account, she should not therefore be deprived of her $300. "These omissions were, however, for the reason that she considered it as her own. She had earned it. No money coming from her husband was a part of it. She might well be pardoned the error of belief which she enter-

[Speakman's Appeal.]

tained. As there were no creditors she could have contemplated no fraud on them, still less could she have supposed that the mother of her husband would have contested her right to these earnings. Few would have done so."

The auditor allowed her the $25 received from her father and charged her with $75 in gold at $2.60, the price at which she sold it, with interest from October 1864, the time of the sale.

On the second head the auditor reported :

" On this head, I find no evidence that the gold first known to be in the possession of the second husband was that of the first. The decedent, according to the weight of the testimony, was an unthrift, and in the latter years of his life wholly without the habits which acquire or save. Without the frugality and commendable industry of his wife, I cannot see but that his life towards the close would have been one of squalor and penury. She did all the work. In the garden, the slaughter-house, behind the bar, with the needle, and at the wash-tub; often after the labors of the day should have been over, had her domestic duty to be performed.

" It is nothing to the purpose that we do not know where the present husband got the money. We have no legal right to inquire. * * * On the day appointed for the argument, the counsel asking the surcharge said he would make no objection to his examination, but he was not then present, and the counsel for the administratrix might well hold that it was unnecessary, as no evidence in any way tended to show that any of the money belonged to the estate of the dead."

On the third head the auditor reported :

" I find no controlling evidence, that the value of the property was different from that at which it was appraised, except that at a sale of a greater part of it in September the sum of $315 above expenses was realized. * * * If the mother, when the appraisement and inventory were filed, had then doubts of its integrity, she had time before the sale in September to have prepared herself to support this surcharge. She has not done so, and I cannot supply the omission. * * *

" The black mare and colt, appraised at $50, were sold at $70. I surcharge the $20, with interest from September 1st 1863, as it was sold before the sale.

" In this case the accountant did not file in the office of the register a just and true account of the articles sold at public auction, and the prices and purchasers thereof, as required by § 11, Act of February 24th 1834, Pamph. L. 74. Here then was a sale, and there was a vendue list made out. If this list had been produced before, much of this litigation might have been avoided, and as the same has always been in the possession of the accountant, the expense of this reference must be borne by her. I shall

disallow the commissions, because she did not surcharge herself with the amount realized from the sale, as she ought to have done.

" As much of the litigation on this account has arisen in the effort to surcharge to an amount largely unjust, I allow H. M. Dechert, Esq., $50 for professional services.

The following is the adjustment of the account:

| | | |
|---|---:|---:|
| Appraisement, | $237.50 | |
| Realized at public sale, in excess, | 77.50 | |
| Sale of mare and colt, | 20.00 | |
| | $335.00 | |
| Interest from September 1st 1863 to June 1st 1870, | 134.00 | |
| | | $469.00 |
| Surcharge of $75 in gold, at premium of $2.60, | $270.00 | |
| Interest from Oct. 1st 1864 to June 1st 1870, | 91.80 | |
| | | 361.80 |
| | | $830.80 |
| The credit allowed by the former auditor, with the deduction of commissions, | $251.06 | |
| Interest from Sept. 1st 1863 to June, | 100.40 | |
| Expenses of the former audit, | 125.62 | |
| H. M. Dechert, Esq., | 50.00 | |
| | | 527.08 |
| Net balance for distribution, | | $303.72 |

Awarded to Thomas H. Speakman, Esq., administrator of Margaret Morton, $151.86
Margaret Knorr, wife of Wm. Knorr, the sum of 151.86

| | | |
|---|---|---:|
| Expenses of reference: | | |
| Clerk of Orphans' Court, | | $10.00 |
| Auditor, | | 120.00 |
| | | $130.00 |

Exceptions to the report of the auditor, in the Orphans' Court were " dismissed, except as to so much as applies to the allowance to the widow of $300, with the premium of 260 per cent. The allowance should have been for $300, less the premium."

The administrator of the mother appealed to the Supreme Court.

The errors assigned were the decree of the court confirming the report of the auditor, with the exceptions stated in it.

*T. H. Speakman*, appellant, *p. p.*

*H. M. Dechert*, for appellee.

The opinion of the court was delivered, February 26th 1872, by
WILLIAMS, J.—Unquestionably the finding of an auditor, if not
supported by the evidence, may be set aside or disregarded by the
court; but like the verdict of a jury it should be allowed to stand,
unless it is clearly against the weight of the evidence.   In this
case the auditor found that the administratrix is not chargeable
with the proceeds of the seven hundred dollars in gold which she
paid to James Miller, in part consideration of the property pur-
chased of him in October 1864, and which is alleged to have
belonged to her present' husband, to whom the property was con-
veyed.   The appellant complains of the auditor's finding in this
respect, but we fail to discover any sufficient evidence to justify
us in·setting it aside, and charging the administratrix with the
proceeds of the gold in question.   There is no positive evidence
that the money belonged to her deceased husband.   It was not
shown to have been in his possession at any time during his life,
nor in the possession of the administratrix until some months after
his death.   How then can we say that the auditor erred in not
finding that it was the decedent's money, in the face of the posi-
tive testimony of the administratrix that it belonged to her present
husband and that she received it from him after their marriage?
The question is not whether the evidence leaves any doubt as to
his ownership, but whether it shows with reasonable certainty that
it belonged to the decedent.   We think it does not, and the finding
of the auditor must, therefore, be allowed to stand.

The auditor rightly decided that the earnings of the wife be-
longed to the husband, but he should also have charged the ad-
ministratrix with the money received from her father in 1841.
If it was a gift from her father, as alleged, then, as soon as it was
received by the wife, it became the absolute property of the hus-
band, without any act on his part, unless he waived or relinquished
his right to it, of which there is no evidence.   The administratrix
is therefore bound to account for the proceeds of the gold derived
from her own earnings and the gift of her father.   But she is en-
titled to retain three hundred dollars out of ·the proceeds, unless,
as the appellant contends, she is estopped by having fraudulently
claimed the money as her own.   It does not follow that she was
guilty of intentional fraud in claiming the money.   She may
honestly have supposed, as it was the product of her earnings and
the gift of her father, that she was entitled to it in her own right,
and was not liable to account for it as the property of her hus-
band.   And this we think is the reasonable presumption from the
evidence.   Claiming the money as her own, under the circum-
stances of this case, is not in itself such evidence of fraud as
should prevent the administratrix from retaining the amount al-
lowed by the exemption acts.   But we discover no sufficient
reason for allowing the administratrix credit for the expenses of

[Speakman's Appeal.]

the former audit, and a fee of fifty dollars to her counsel for professional services; and these items must, therefore, be stricken out of the account. The administratrix, as the auditor has found, sold a part of the personal estate at public vendue, but she did not file in the office of the register a just and true account of the articles sold and the prices and purchasers thereof, as required by the Act of 1834; nor did she charge herself with the amount realized from the sale of the property in excess of its appraised value. Having thus failed in the performance of her duty, and having presented an account of her administration of the estate, which she must have known to be incorrect, she is not entitled to an allowance for any of the expenses incurred by the audit.

Correcting the account in accordance with the foregoing opinion and adding interest to date, the balance for distribution in the hands of the administratrix is shown by the annexed statement to be twelve hundred and ten dollars and three cents ($1210.03), and for this amount the decree must be entered.

And now February 26th 1872, the decree of the Orphans' court is reversed and modified in accordance with the statement hereto annexed, exhibiting a balance of twelve hundred and ten dollars and three cents ($1210.03), at which sum the account is finally confirmed: and the said balance is ordered to be distributed according to law. And it is further ordered that all the costs be paid by the appellee.

DR.

| | | |
|---|---:|---:|
| Amount of appraisement and amount realized at public sale in excess, as per report of auditor, . . . . . | $335.00 | |
| Int. from Sept. 1st 1863 to Feb. 24th 1872, | 170.51 | |
| | | $505.51 |
| Surcharge of $400 in gold sold at $2.60, | $1040.00 | |
| Deduct amount allowed administratrix under exemption act, . . . . . | 300.00 | |
| | $740.00 | |
| Int. from Oct. 1st 1864 to Feb. 24th 1872, | 343.36 | |
| | | 1083.36 |
| | | $1588.87 |

CR.

| | | |
|---|---:|---:|
| Amount allowed by auditor, less commissions, | $251.06 | |
| Int. from Sept. 1st 1863 to Feb. 24th 1872, | 127.78 | |
| | | 378.84 |
| Balance, . . . . . . . . | | $1210.30 |