## Countryman's Estate.   Countryman's Exrs.' Appeal.

*Widow's exemption—Election—Waiver by inconsistent demands.*

Where a widow who is also executrix makes no claim of exemption before the auditor, but seeks to establish her ownership in a fund which it is claimed should have been included in her account, she cannot, after the auditor has decided adversely to her, claim the fund under the exemption laws. Speakman's Ap., 71 Pa. 25, distinguished.

*Auditor's finding of facts—Decedent's estates.*

An auditor's finding that a fund claimed by the executor was really the property of the testator and should have been included in the account, if based upon sufficient evidence and approved by the court below, will not be reversed by the Supreme Court.

*Evidence—Admission of irrelevant evidence—Review.*

The Supreme Court will not reverse because of the admission of evidence apparently irrelevant, where such evidence was not the basis of any finding against the appellants, and therefore did no harm.

Argued Oct. 12, 1892. Appeal, No. 245, Oct. T., 1892, by Belinda Countryman and John O. Hay, administrators of George J. Countryman, deceased, from decree of O. C. Somerset Co., dismissing exceptions to report of auditor on exceptions to administrators' account. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ

Exceptions to administrators' account.

Before the auditor on exceptions and to distribute, A. J. Colborn, it appeared that decedent died April 28, 1890, intestate. On May 14, 1890, letters of administration were granted to appellants. On Sept. 25, 1890, an order was issued to appellants for sale of real estate to pay debts; the sale was made March 28, 1891, and confirmed May 25, 1891. On July 25, 1891, appellants filed their account, charging themselves with $4,400, proceeds of the real estate, and $1.45 personalty. Judgment creditors filed exceptions, claiming to surcharge the accountants for moneys collected by them, and $200 cash on hand at the time of decedent's death.

The evidence as to the $200 was to the effect that decedent had bought his farm from Wendle Winters and still owed some of the purchase money.

Mary Shaffer testified under objection and exception as follows: "I was at Countryman's in the evening before he died; he died in the night; he said that he had $200 for grandfather Wendle Winters, and wondered if I would take it along to him; I remained there until he died; his wife was present when he said he had $200 for Winters." [10]

Wendle Winters testified under objection and exception as follows: "I was at the house second day after his death while his body was still there; when I went there F. J. Countryman said in the presence of the widow that George had $200 for me, on the land, but they had concluded to keep it—that they needed it." [11]

Noah D. Bowman and Annie Blough, under objection and exception, testified as to the sale of certain personal property by the administrators. [12] No exception was taken to the admission of their testimony, nor was any claim made that the proceeds of such sale should have been included in the account.

The widow claimed that the attempted surcharge was from property assigned to her by her husband or the product of such property; that her husband being indebted to her for money paid him by her from her father's estate, gave a judgment which she afterwards satisfied when only part was paid, taking from him the following paper signed by him and under seal:

"Jan. 21, 1889. To whom it may concern, this is to certify that in consideration of a judgment held against me by my wife,

Belinda, Feb. T., 1886, No. 70, of $2,500, having a receipt for $969.03, bal. of $1,806.55 with int., I have this day delivered all I have accumulated and for five years to come, all is to belong to plaintiff to satisfy this judgment."

The auditor found as follows :

" The only matters controverted are the $200 which Geo. J. Countryman had on hand at the time of his death, and the $34.25 paid to the administrators by Josh. Berkebile, after Countryman's death.

" The $200 which Countryman had in his possession at the time of his death, and which he declared was for Wendle Winters, he had collected from Joseph Mishler and Joshua Berkebile for cattle, horse, and cross-ties made from timber from the farm of Countryman. The widow, Belinda Countryman, now claims that she was the owner of the stock sold to Mishler, and of the cross-ties sold to Berkebile, and that the money belonged to her. Geo. J. Countryman sold the horse and cattle to Joseph Mishler, and Mishler paid $244 of the price at the time and gave his note for $100, the balance; the wife made no claim to the property. The cross-ties were purchased by Joshua Berkebile from Countryman, and they were made from timber growing on Countryman's farm. The money was paid to Countryman, and the evening before he died, when he declared that he had $200 on hand for Wendle Winters, and asked Miss Mary Shaffer if she would not take it to Winters, his wife was present and heard all that was said, and made no claim to the money, nor did she contradict what her husband said or claimed. Countryman sold the horse, cattle and cross-ties to Mishler and Berkebile as his property, he collected the money as his own and declared in presence of his wife that it was his, and she made no claim to either; she cannot make claim to it after his death. Your auditor is at a loss to see how the widow can have any claim, either in law or in equity, to the $119 paid by Berkebile for cross-ties. Your auditor is clearly of the opinion that the $200 which Countryman had in his possession at the time of his death, and which he said was for Winters, was his money, and that the administrators should be charged with the same. And your auditor believes that there can be no doubt about the $34.25 paid by Berkebile to the administrators after the death of Countryman, as the balance on cross-

ties belonging to Countryman's estate, and the administrators should be charged with the same. . . .

" The evidence shows that after the death of Countryman, his widow sold and converted to her own use a large amount of personal property, consisting of horses, cattle, wheat, rye, buckwheat, oats by the bushel and grain in the ground, also farm implements, etc. A copy of the sale was demanded by the creditors, but it has not been furnished. Your auditor does not express an opinion as to whether the property, thus sold and converted by the widow, was her property or not, as there is no exception filed as to the matter requiring such action."

Various exceptions were filed to the auditor's report. Exceptions 1–9 were as to findings of fact. Exceptions 15 and 16 were as follows:

" 15. The auditor should have held as a matter of law that if the [sum charged] was not her separate estate but belonged to the estate of Geo. J. Countryman, her deceased husband, that she, as the widow, was entitled to it under the exemption law of April 14, 1851, and its supplements."

The auditor answered this exception as follows : " The auditor could have made no such holding as asked for in this exception. In the hearing before the auditor no question was raised about the $300 exemption to the widow, whether she had or would claim it. The right of a widow to retain $300 out of the real or personal property of her deceased husband's estate, is a personal privilege which she may waive. This privilege is waived entirely if she neglects to demand an appraisement. Your auditor is not informed and does not know whether the widow claimed the exemption of $300 or not at the proper time. She cannot claim it now."

" 16. The auditor is hereby notified that if he holds that the moneys received from Mishler and Berkebile, belong to the estate of Geo. J. Countryman, deceased, then in that event Belinda Countryman, as his widow, claims the same under the provisions of the act of assembly of April 14, 1851, and its supplements, allowing the widow to retain $300 worth of property, moneys, etc., out of the estate of deceased for the benefit of herself and her family, and the auditor is requested by said widow to allow her claim—the money having been used and appropriated by her to her own use."

The auditor answered this exception as follows: "The auditor does hold that the money collected from Mishler and Berkebile, belongs to the estate of Geo. J. Countryman deceased. The widow should have acknowledged this fact and made her claim as widow for the $300 exemption to herself and her brother as administrators of said Countryman a year or two ago. The administrators were the only parties from whom she could demand an appraisement of the $300 exemption. She cannot make the demand now. She is too late. She has waived her right. The widow claimed and still claims to be the owner of this money and that it did not belong to the estate of Geo. J. Countryman, her deceased husband. The creditors of Geo. J. Countryman deny her right and these proceedings are to determine the right, and when the ownership is found to be in the estate and not in the widow, then she abandons her unjust claim and asks that it be turned over to her as the widow under the act of assembly of April 14, 1851. If the money was hers it could not be appraised and set apart to her as the widow or a part of the estate of Geo. J. Countryman, deceased. If the money belongs to the estate of Geo. J. Countryman, deceased, then her claim is fraudulent and she cannot have it set apart to her under the widow's exemption law."

The court overruled the exceptions, filing the following opinion and decree:

"Aug. 25, 1892, the exceptions are overruled and the report of the auditor is confirmed. [The demand to set aside $300 for the benefit of the widow comes too late: 92 Pa. 69; 120 Id. 529, etc."] [14]

*Errors assigned* were (1–9) overruling exceptions to finding of facts; (10–12) rulings on evidence; (13) overruling fifteenth exception; (14) portion of the opinion as above; quoting exceptions, evidence and opinion; and (15) confirmation of auditor's report and overruling exceptions thereto.

*Valentine Hay*, for appellants, cited as to burden of proving gift to wife: Bergey's Ap., 60 Pa. 408; Wormley's Est., 137 Pa. 101; as to widow's exemption without appraisement: Larrison's Ap., 36 Pa. 130; Peterman's Ap., 76 Pa. 116; Soult's Ap., 82 Pa. 153; as to claim before auditor: Speakman's Ap.,

71 Pa. 25; Koch's Est., 12 W. N. 305; Kirkpatrick's Est., 5 Phila. 98; as to circumstances rebutting implied waiver: Wissel's Ap., 4 Penny. 236.

*W. H. Koontz, F. W. Biesecker* with him, for appellees, cited, as to waiver of exemption by delay or conduct inconsistent with claim: Williams's Ap., 92 Pa. 71; Kerns's Ap., 120 Pa. 523.

OPINION BY MR. JUSTICE MITCHELL, November 7, 1892.

The first nine assignments of error relate to findings of fact by the auditor approved by the court below. They must stand unless clearly erroneous. The decedent was living on the farm which he had bought, but had not fully paid for. The title was in his name and he dealt with the stock and products as if they were his own. The money with which the accountants were surcharged was admitted to have been the proceeds of sales of farm products and farm stock, and much the larger part of it was not only in his hands as money at the time of his death, but he was shown to have used and treated it as his own. The burden of showing the contrary was on the widow claiming it as hers. Whether the secret arrangement between husband and wife by which he " delivered all I (he) have accumulated, and for the five years to come all is to belong to " plaintiff could stand against his creditors we are not required to consider. The auditor found that the widow's claim of ownership was not proved, and a careful reading of the evidence has not convinced us that his conclusion was wrong.

The objections to testimony cannot be sustained. That of Winters and Mary Shaffer bore upon the question in controversy, and that of Bowman and Annie Blough though apparently irrelevant, was not made the basis of any finding against the appellants, and therefore did no harm.

There remains only the question whether the claim of the widow's exemption was too late, and Speakman's Appeal, 71 Pa. 25, is relied upon to show that it was not. That was an extremely hard case where a frugal and industrious woman had with a small money-present from her father and her own labor without any assistance from an intemperate and improvident husband, accumulated a fund which she naturally considered and treated as her own. The auditor found expressly

Opinion of the Court—Syllabus.

that her claim was the result of a misapprehension of the law, and was entirely free from fraud. He also reported as a fact that there were no creditors of the husband opposing. This court was obliged to hold that her earnings were the husband's, but accepting the auditor's report as conclusive on the question of fraud and equity, allowed the exemption. The present is not such a case. The claim of the widow to the property was not based on any wrong view of the law but on a dispute as to the facts, and the auditor while not finding fraud expressly, yet speaks of the claim as fraudulent. It is not necessary to go so far, or to suppose that her claim was fraudulently made. It is enough that she is making inconsistent demands. When objection was made to the account she had two courses open to her, to claim the money under the exemption law, or to maintain that it was her own, leaving her claim for exemption open as a charge on the rest of the estate. She chose the latter course, and in so doing became responsible for the delay and expense of the contest before the auditor. Having made her election, contested the matter to the end, and failed, she could not then go back to the other claim and enforce it without manifest inconsistency, and injustice to the exceptants. The auditor and court rightly held that she had waived her right to the exemption.

Decree affirmed.